UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JEFFREY VIGGERS and GAYLE VIGGERS, *individually and on behalf of* JOEL VIGGERS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:09-CV-2 |
| HAMILTON COUNTY, TENNESSEE, | ) ) | Chief Judge Curtis L. Collier |
| Defendant. | ) ) | |

## MEMORANDUM

Before the Court is Defendant Hamilton County's ("Defendant") motion for summary judgment and supporting memorandum (Court File Nos. 9, 10). Plaintiff s Jeffrey Viggers and Gayle Viggers ("Plaintiffs") did not file a response. For the reasons stated below, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 9).


## I.     RELEVANT FACTS

This suit arises from the suicide of Joel Viggers ("Mr. Viggers"). The Plaintiffs are suing in their individual capacity and on behalf of the decedent.

Mr. Viggers was a pretrial detainee at Hamilton County jail. He hung himself in his jail cell on January 7, 2008, and died of complications related to this injury on January 14, 2008 (Compl. ¶¶ 5, 33, 39). Before his death, Mr. Viggers had a history of mental illness (Compl. ¶¶ 5, 6). In May 2007, Mr. Viggers was placed on "suicide watch" until such precautions were discontinued at the directive of Dr. Mohsin Ali (Compl. ¶¶ 10, 12). In fact, Dr. Ali examined Mr. Viggers on several occasions while he was detained at the Hamilton County Jail (Compl. ¶ 11).

In July 2007, after Mr. Viggers began experiencing hallucinations, he was committed to the Moccasin Bend Mental Health Institute, where he received treatment before being transferred back to the Hamilton County Jail (Compl. ¶¶ 13, 15). In early August 2007, Mr. Viggers was examined by Dr. Ali, who reduced the dosage of certain anti-psychotic and mood-stabilizing medicines (Compl. ¶ 17). Mr. Viggers was again examined in September 2007 by Dr. Ali, who again reduced his anti-psychotic medication (Compl. ¶18). In December 2007, and because of his behavior patterns, Mr. Viggers was removed from the general population of the jail and was placed in segregated confinement. Dr. Ali examined him on December 15, 2007, but did not order suicide precautions.

On January 1, 2008, Hamilton County jail prepared a "Special Handling Letter" regarding Mr. Viggers and his continued segregation from the general population. This segregation was being continued as a result of his mental condition (Compl. ¶¶ 24, 25; Swope Affidavit, ¶¶ 7-8). According to Plaintiffs, this Special Handling Letter "specifically provided" that Mr. Viggers was not to be provided with a bedsheet. Defendant, however, asserts the document does not contain such a prohibition. According to Captain John Swope, who presides over the daily operations of the jail, because Mr. Viggers was not on "suicide watch" at the time, there would have been no prohibition against Mr. Viggers being issued a bedsheet as well as other items (Compl. ¶ 2; Swope Affidavit, ¶ 8).

On January 7, 2008, Mr. Viggers was discovered hanging in his cell. He was transported to Erlanger Medical Center but remained unconscious until he died on January 14, 2008. (Compl. ¶¶ 36-39).

According to Defendants, the Special Handling Letter called for observation of Mr. Viggers every thirty minutes, but an investigation which took place after the event revealed that one officer falsely reported making such an observation (Swope Affidavit, ¶ 9). This officer was disciplined for violating County policy. In addition, after Mr. Viggers was found hanging, certain officers failed to take appropriate rescue measures in a timely fashion. The investigation determined that their actions were also in violation of Hamilton County policies, and they, too, were disciplined as a result (Swope Affidavit, ¶ 9).

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant

fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    DISCUSSION

Plaintiffs' sole cause of action is an allegation of a constitutional violation under 42 U.S.C. § 1983. To establish liability under § 1983, Plaintiffs must demonstrate: (1) they were deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Moreover, a municipality may be liable under § 1983 only where the municipality itself causes the constitutional violation.

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as a entity is responsible under § 1983.

*Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). There must be a direct casual link between a municipal policy or custom and the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Theories of respondeat superior or vicarious liability are not applicable. *Id.* at 691; *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). "Therefore, in order to state a claim against a city or a county under § 1983, a plaintiff must show

that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

In some situations, a municipality can be liable under § 1983 when its failure to adequately train its officers demonstrates a risk "so obvious as to constitute deliberate indifference to the rights of its citizens." *Gray v. City of Detroit*, 399 F.3d 612, 618 (6th Cir. 2005). Such a situation arises when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

In this case, Plaintiffs have only filed suit against Defendant Hamilton County. Therefore, an essential element for Plaintiffs' claim under § 1983 for which Plaintiffs hold the burden of proof is that Defendant had a custom or policy that has a direct casual link to Plaintiffs' injury. Plaintiffs asserted in their complaint that Defendant had such a custom or policy and that its custom or policy was defective in preventing constitutional violation (Compl. ¶ 57 *et seq.*). Part of Plaintiffs' theory, at least as described in the complaint, is that Defendant is liable because Defendant had an obligation to enact specific polices and procedures to address an inmate's mental health issues and, because it failed to enact meaningful policies and procedures, this omission led to Mr. Viggers's suicide (*id.*).

In its motion for summary judgment, Defendant asserts it does in fact have specific policies and procedures for addressing an inmate's mental health issues, and in this specific case its employees' conduct with regard to Mr. Viggers were in violation of those policies and procedures (Court File No. 10, at 3). In other words, Defendant asserts because its customs and policies were

violated, its customs and policies could not have been the moving force behind Mr. Viggers's death (*id.*).

As the non-moving party, it is Plaintiffs' obligation to submit significant probative evidence sufficient to create a genuine issue of material fact as to whether: 1) Defendant had a custom or policy with a direct casual link to Mr. Viggers's suicide; or 2) Defendant lacked an adequate custom or policy for addressing this type of issue and that inadequacy was so likely to result in a constitutional violation that Defendant's omission constitutes deliberate indifference. *See Celotex*, 477 U.S. at 324. In the complaint, Plaintiffs only generally assert Defendant lacks a custom or policy for addressing an inmate's mental health issues. Plaintiff do not specifically identify why the omission of such a policy can reasonably be said to demonstrate deliberate indifference. Therefore, Defendant is entitled to summary judgment on Plaintiffs' theory that Defendant's failure to enact an adequate custom or policy caused Mr. Viggers's suicide.

Moreover, because Defendant has explicitly shown evidence indicating it does in fact have a custom or policy for addressing an inmate's mental health issues, Plaintiffs have the burden of submitting evidence that this custom or policy had a direct casual link to Mr. Viggers's suicide. Plaintiffs have failed this burden. For example, even though Plaintiffs contend the jail had ordered in the "Special Handling Letter" that Mr. Viggers was not allowed to have a bed sheet, the mere fact that a jail employee provided Mr. Viggers with a bed sheet does not show a casual link between Defendant's custom or policy and Mr. Viggers suicide. In fact, even if Plaintiffs' assertion were true, it would suggest that the jail employee was disobeying Defendant's custom or policy, rather than suggest the custom or policy caused his death. Plaintiffs have identified no specific evidence linking Defendant's custom or policies as a direct cause of Mr. Viggers's suicide.

Because Plaintiff does not identify specific evidence in their complaint that disputes Defendant's assertions on summary judgment, and because Plaintiffs did not respond to Defendant's motion for summary judgment, the Court cannot find any evidence in the record which would create a genuine issue of material fact. Therefore, Defendant is entitled to summary judgment.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**